01
02
03
04
05
06
07
08

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

09  TYRONE WASHINGTON,                          )
                                                )
10          Plaintiff,                          )    Case No. C04-1581-RSM
                                                )
11      v.                                       )
                                                )
12  OFFICER JIM NGO, et al.,                     )    REPORT AND RECOMMENDATION
                                                )
13          Defendants.                         )
    _____ )

14

15              <u>INTRODUCTION AND SUMMARY CONCLUSION</u>

16          Plaintiff is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights

17  action.  Plaintiff alleges, among other things, that officers at the King County Correctional

18  Facility violated his civil rights by directing racial slurs at him and retaliating against him when

19  he used the prison grievance system.[1]  The defendant correctional officers have denied they

20  violated plaintiff's civil rights and have moved for summary judgment against him.  Plaintiff

21  opposes defendants' motion for summary judgment and has moved the Court for appointment

22  of counsel.  Having carefully reviewed the parties' pleadings, supporting materials, and the

23  available record, the Court recommends that defendants' motion for summary judgment, Dkt.

24  No. 31, be GRANTED and that plaintiff's action be dismissed with prejudice.

25  _____

26          [1]Plaintiff originally brought suit against the King County Regional Justice Center as
    well, but the Court dismissed it as an improper defendant.  Dkt. No. 23.

REPORT AND RECOMMENDATION
PAGE -1

01 <u>FACTS AND PROCEDURAL HISTORY</u>

02        Plaintiff is a prisoner who is currently incarcerated at the McNeil Island Correctional

03 Center in Steilacoom, Washington.  Dkt. No. 30.  This litigation, however, surrounds events

04 that allegedly occurred while plaintiff was an inmate at the King County Regional Justice

05 Center ("RJC") in Kent, Washington, in late June and early July of 2004.  Dkt. No. 34.

06        Plaintiff alleges that while he was an inmate at RJC, Correctional Officer Jim Ngo

07 accosted him during dinner and ordered him to "rack back" for two hours without

08 justification.[2]  Dkt. Nos. 11, 12.  He alleges that Officer Ngo stated to him that "all you niggas

09 are just alike" and then ordered him to serve an additional four-hour "rack back" without

10 justification.  Dkt. No. 12.  Plaintiff also alleges that Sergeant Michael Jones violated his civil

11 rights by denying the grievance plaintiff filed against Officer Ngo and separately by sending

12 him to solitary confinement.  Dkt. Nos. 11, 12.  Finally, plaintiff argues that Captain Woodbury

13 violated his civil rights by failing to find merit in his grievance against Officer Ngo.  Dkt. No.

14 11.

15        In response, defendants have filed a motion for summary judgment and dismissal.  Dkt.

16 No. 31.  Defendants argue that the case should be dismissed as to Sergeant Jones and Captain

17 Woodbury because plaintiff has failed to plead facts which show that either of them violated

18 plaintiff's constitutional rights.  *Id.*  Further, Officer Ngo has no recollection of directing any

19 racial slur towards defendant and argues that, even if he had, such language did not violate

20 plaintiff's civil rights.  Dkt. No. 32.  Officers Ngo and Jones also assert the "rack back" orders

21 were appropriate responses to control plaintiff's disruptive behavior and that the order for

22 segregation was in response to a separate violation for tampering with a commissary vending

23 machine and theft.  Dkt. Nos. 31, 32.

24

------------------

25        [2]A "rack back" is an inmate management technique that requires inmates to return to
26 their cells.  It does not involve physical discipline, does not impact the inmate's housing
situation, nor does it result in any loss of "good time."  Dkt. No. 34.

REPORT AND RECOMMENDATION
PAGE -2

<u>DISCUSSION</u>

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must assert that he suffered a violation of rights protected by the Constitution or created by federal statute, and that the violation was proximately caused by a person acting under color of state or federal law. *See Crumpton v. Gates,* 947 F.2d 1418, 1420 (9th Cir. 1991); *see also WMX Technologies, Inc. v. Miller*, 197 F.3d 367, 372 (9th Cir. 1999) (en banc).  Section 1983 liability arises only upon a showing that defendants personally participated in violating plaintiff's civil rights.  *Respondeat superior* liability will not support § 1983 liability unless plaintiff demonstrates that a supervisor participated in the violations, directed the violations, or knew about the violations and did nothing to prevent them.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (internal citation omitted); *see also Mabe v. San Bernardino County,* 237 F.3d 1101, 1109 (9th Cir. 2001).

    A.   <u>Plaintiff's claim relating to denial of his grievance against Captain Woodbury and  Sergeant Jones must be dismissed.</u>

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of an action for "failure to state a claim on which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  A court faced with such a motion must accept all facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *Karam v. City of Burbank,* 352 F.3d 1188, 1192 (9th Cir. 2003).  The Court, however, is not required to accept legal conclusions cast in the form of factual allegations when it is unreasonable to draw those conclusions from the facts alleged. *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994).  "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).  These rules apply to civil rights complaints brought by *pro se* plaintiffs, although pleadings are held to a less stringent standard than formal pleadings drafted by lawyers.  *See, Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also Gillespie v. Caviled*, 629 F.2d 633, 640

REPORT AND RECOMMENDATION
PAGE -3

01 (9th Cir. 1980).

02      In this case, defendants' motion to dismiss plaintiff's claims relating to the denial of his

03 grievances should be granted.  Plaintiff's complaint fails to allege that Captain Woodbury

04 personally participated in violating his civil rights, nor that he in any way directed the alleged

05 violation of his rights.  Similarly, plaintiff does not allege that Captain Woodbury knew about

06 the alleged violations and did nothing to correct them.  Instead, plaintiff essentially alleges that

07 Captain Woodbury and Sergeant Jones allowed Officer Ngo to violate his rights by denying

08 the grievance he filed against Officer Ngo.  This Court is unaware of any authority, and none

09 has been provided by plaintiff, that imposes § 1983 liability on a prison officer solely because

10 the prison officer disagrees with a prisoner's administrative grievance.

11      B.      Defendants' motion for summary judgment regarding alleged use of a
               racial slur by Officer Ngo must be dismissed.

12

13      Generally, verbal harassment and threats do not state a claim under 42 U.S.C. § 1983.

14 *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987).  Even the use of racial slurs to harass

15 prisoners, without more, does not rise to the level of a constitutional violation.  *See  Hoptowit*

16 *v. Ray*, 682 F.2d 1237, 1252 (9th Cir. 1982).

17      Here, plaintiff alleges that Officer Ngo stated to him that "all you niggas are just alike."

18 Dkt. No. 12.  No prison records or any other evidence available to the Court support plaintiff's

19 allegation.  Dkt. No. 34.  Officer Ngo denies directing any such racial slur towards plaintiff.

20 Dkt. No. 32.  Similarly, Officer K. Terry, who witnessed the incident, did not recall  hearing

21 Officer Ngo use any racial slur, including the term "nigga."  Dkt. No. 35.  Nevertheless, the

22 plaintiff is certain that it occurred.  Assuming a set of facts most favorable to the plaintiff —

23 e.g., that the slur was used — such allegations do not state a claim for violation of a prisoner's

24 civil rights under § 1983.  As a result, this claim must be dismissed as a matter of law.

25      C.      Defendants' motion for summary judgment on the "rack back" charge
               and the segregation charge must be granted on the grounds of qualified
               immunity.

26

REPORT AND RECOMMENDATION
PAGE -4

01    The plaintiff also asserts that he has been the subject of "rack backing" and segregation

02 in retaliation for filing a grievance.  Dkt. Nos. 11, 12.  As to these issues, the defendants are

03 entitled to dismissal on the grounds of qualified immunity.

04    Public officials who perform discretionary functions enjoy qualified immunity in a civil

05 action for damages, provided that his or her conduct does not violate clearly established federal

06 statutory or constitutional rights which a reasonable person would have known.  *Harlow v.*

07 *Fitzgerald*, 457 U.S. 800, 818 (1982).[3]  Qualified immunity is "immunity from suit rather than

08 a mere defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

09    To determine whether an official is entitled to qualified immunity, the Court must

10 conduct a two step analysis.  First, it must determine whether the facts alleged, when taken in a

11 light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a

12 constitutional right.  *Saucier v. Katz,* 533 U.S. 194, 201 (2001); *Cruz v. Kauai County*, 279

13 F.3d 1064, 1068 (9th Cir. 2002).  If the plaintiff's pleadings could be found to allege a

14 violation of a constitutional right, the Court must determine whether the right was "clearly

15 established" at the time of the alleged violation.  *Saucier,* 533 U.S. at 201; *Cruz*, 279 F.3d at

16 1069.

17    1.    <u>If taken as true, plaintiff's complaint shows defendants'</u>
        <u>conduct could have violated his constitutional right to</u>
18        <u>remain free from retaliation.</u>

19    The first prong of the qualified-immunity analysis requires the Court to determine

20 whether the facts alleged, when taken in a light most favorable to the plaintiff, demonstrate that

21 the defendant's conduct violated a constitutional right.  *Saucier,* 533 U.S. at 201; *Cruz,* 279

22 _____

23    [3]Plaintiff's request for injunctive relief must be dismissed, due to mootness.  He has no

24 live, cognizable interest in preventing officers from engaging in the behavior complained of
   now that he resides in a different facility.  *See Public Utilities Comm'n v. FERC,* 100 F.3d

25 1451, 1458 (9th Cir. 1996).  Further, plaintiff has no standing to seek injunctive relief due to
   lack of imminence.  Past injury is not enough to merit prospective injunctive relief.  *Lujan v.*

26 *Defenders of Wildlife,* 504 U.S. 555 (1992).

REPORT AND RECOMMENDATION
PAGE -5

F.3d at 1068.  This inquiry mirrors the Court's substantive analysis of a motion for summary

judgment.  *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002) (as amended).

Here, plaintiff's complaint satisfies the first prong of the qualified-immunity analysis.

The Ninth Circuit has repeatedly recognized that the First and Eighth Amendments and the

Due Process Clause protect a prisoner's right to file grievances without being retaliated against

by prison officials.  *Austin v. Terhune*, 367 F.3d 1167, 1170-71 (9th Cir. 2004); *Hines v.

Gomez*, 108 F.3d 265, 269 (9th Cir. 1997); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir.

1995); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).  Taken in a light most favorable to

plaintiff, he has described facts which allege that prison officials sent him to solitary

confinement and ordered him to "rack back" in retaliation for bringing administrative

grievances.  Dkt. Nos. 11, 12.  Additionally, he has identified the Due Process Clause as a

source of protecting that right.  Defendants appear to concede this issue.  Dkt. No. 31.

2.  <u>Plaintiff's complaint fails to show prison officials'</u>
<u>conduct violated a clearly established constitutional right.</u>

Having found that plaintiff has adequately alleged a violation of his constitutional

rights, the Court must then determine whether the right was "clearly established," that is,

whether defendants violated that clearly established right.  *Saucier*, 533 U.S. at 201.  A right is

"clearly established" if its contours are sufficiently clear for a reasonable official to understand

that his or her actions would violate that right.[4]  *Id.* at 202 (citing *Anderson v. Creighton*, 483

U.S. 635, 640 (1987)).  Because it is often difficult for officials to determine whether their

conduct is consistent with the law, the dispositive inquiry is "whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.*  Thus, an

official who makes a mistake in applying the relevant legal doctrine may still receive qualified

---

[4]The Court must turn first to controlling authority in this Circuit or from the Supreme
Court of the United States.  *Sorrels*, 290 F.3d at 970.  If no controlling authority exists, the
Court should next turn to decisions of "sister Circuits, district courts, and state courts."  *Id.*
(internal citations omitted).

01  immunity if his or her mistake was reasonable. *Kennedy v. City of Ridgefield*, 411 F.3d 1134,

02  1141-42 (9th Cir. 2005). Plaintiff bears the burden of showing that the right in question was

03  clearly established under this second prong. *Sorrels*, 290 F.3d at 969.

04        In order to state a claim for retaliation, plaintiff must assert that the allegedly retaliatory

05  action failed to advance legitimate correctional goals or that it was not narrowly tailored to

06  meet such goals. *Pratt*, 65 F.3d at 806; *Hines*, 108 F.3d 265, 266 (9th Cir. 1997). Plaintiff

07  bears the burden of proving the absence of legitimate correctional goals. *Pratt,* 65 F.3d. at 806

08  (internal citations omitted). Prison guards have a legitimate interest in maintaining internal

09  order and discipline in a prison. *See Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).

10  Moreover, courts afford significant deference to prison officials' discretion to manage their

11  prisons because of their experience and expertise in doing so. *Bell v. Wolfish*, 441 U.S. 520,

12  548 (1979); *Michenfelder v. Sumner*, 860 F.2d 328, 331 (9th Cir. 1988).

13        Here, a reasonable prison official could have believed that ordering a "rack back"

14  lawfully advanced a legitimate penalogical interest. Plaintiff and his cell mate had been

15  disruptive during mealtime by making excessive noise, acting aggressively, and mocking

16  Officer Ngo. Dkt. Nos. 32, 35. In order to control the situation and prevent any escalation,

17  Officer Ngo ordered plaintiff and his cell mate to "rack back." Dkt. No. 32. Plaintiff,

18  however, resisted Officer Ngo's order. Dkt. Nos. 32, 35. In response to plaintiff's behavior,

19  he ordered plaintiff to "rack back" for an additional four hours over the course of the following

20  day. Dkt. No. 32. Ordering plaintiff to "rack back" in these circumstances was a reasonable

21  tactic narrowly designed to ensure order and discipline in the prison. Therefore, qualified

22  immunity is appropriate as to this claim. As discussed above, a "rack back" order simply

23  requires the inmate to return to his cell.

24        Similarly, the transfer of plaintiff to protective custody, which had the effect of

25  segregating him from other inmates and placed restrictions on leaving his cell, was narrowly

26  tailored to advance a legitimate penalogical interest. The total amount of time that the plaintiff

01  spent in protective custody is not entirely clear from the record, but it appears that it may have

02  been for as long as ten days. Dkt No. 38, p. 5. Plaintiff tampered with a vending machine and

03  was accused of taking candy from the machine. This meant that other inmates would have to

04  pay more for candy, or go without, because plaintiff took the candy from the closest

05  distribution slot in the vending machine. This action angered the other inmates and placed

06  plaintiff at risk. Dkt. No. 33, Ex. A. The plaintiff had a hearing and was found guilty of

07  tampering with the vending machine. *Id.* Additionally, plaintiff had angered other inmates in

08  his unit through other actions as well, and his life was threatened. Dkt. No. 33, Ex. B. RJC

09  Classification Specialist Ron Kintner therefore moved plaintiff to protective custody. *Id.*

10  Contemporaneous classification notes confirm that plaintiff was moved "for his own safety"

11  and not in retaliation to his filing of a grievance. *Id.*, Ex. B. Plaintiff's complaint even

12  indicates that, when Sergeant Jones moved him, he stated that "it was for [his] own

13  protection." Dkt. No. 12. Defendants could have believed, with justification, that moving

14  plaintiff to administrative segregation for his own safety was a reasonable response. They are

15  therefore entitled to qualified immunity as to this claim as well.

16  CONCLUSION

17       Defendants' motion to dismiss should be granted as to defendant Captain Woodbury

18  and Sergeant Jones because plaintiff has failed to demonstrate that either of them personally

19  participated in violating his civil rights. Additionally, defendants' motion for summary

20  judgment should be granted as to Officer Ngo because the use of a racial slur does not rise to

21  the level of a constitutional violation. Finally, Officers Ngo and Jones are entitled to qualified

22  immunity on plaintiff's claims regarding "rack backs" and segregation. Plaintiff's complaint

23  should be dismissed. A proposed order accompanies this Report and Recommendation.

24       DATED this 7th day of September, 2005.

25

26       *James P. Donohue*
         _____

REPORT AND RECOMMENDATION
PAGE -8

01

02

03

04

05

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -9